**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------- x
                                 :
                                 :
                                 :
ELBERT HARRIS, JR.,              :
                                 :  Civil No. 3:18-cv-00695
         Plaintiff,              :
                                 :
                                 :
v.                               :
                                 :
                                 :
                                 :
LOWELL P. WIECKER, ET AL.,       :
                                 :
         Defendant.              :
-------------------------------- x
```

<u>**RULING ON MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff Elbert Harris, Jr., formerly an inmate in the custody of the Connecticut Department of Correction, brings this civil rights action pursuant to 28 U.S.C. § 1983. The plaintiff claims that the defendants' practices, policies, acts and omissions resulted in him being exposed to radon gas during his period of incarceration at Garner Correctional Institution in violation of the Eighth Amendment to the United States Constitution and the Connecticut Constitution, Article First, Section 8.

Because the issue of whether the plaintiff exhausted his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997e(a), could be dispositive of the entire case, the court ordered, at the request of the parties, that summary judgment motion practice be bifurcated. See ECF No. 95.

Accordingly, at this time the defendants move for summary

judgment on their Second Affirmative Defense, failure to exhaust

administrative remedies.  For the reasons set forth below, the

defendants' motion for summary judgment is being granted.

## I. LEGAL STANDARD

A motion for summary judgment may not be granted unless the

court determines that there is no genuine issue of material fact

to be tried and that the facts as to which there is no such

issue warrant judgment for the moving party as a matter of law.

Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22

F.3d 1219, 1223 (2d Cir. 1994). An issue is "genuine . . . if

the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986) (citation omitted). A fact is

material if it would "affect the outcome of the suit under the

governing law." Id.

The burden is on the moving party to prove that no genuine

factual disputes exist. See Vivenzio v. City of Syracuse, 611

F.3d 98, 106 (2d Cir. 2010).  In determining whether that burden

has been met, the court must "assess the record in the light

most favorable to the non-movant . . . and draw all reasonable

inferences in [the non-movant's] favor." Weinstock v. Columbia

Univ., 224 F.3d 33, 41 (2d Cir. 2000) (alterations in original)

(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,
902 F.2d 174, 177 (2d Cir. 1990)). Nonetheless, the inferences
drawn in favor of the nonmovant must be supported by the
evidence.  Thus, the nonmoving party "cannot defeat the motion
by relying on the allegations in his pleading, or on conclusory
statements." Gottlieb v. Cnty. of Orange, 84 F.3d 511, 518 (2d
Cir. 1996).

When ruling on a motion for summary judgment, the court
must respect the province of the jury. The court, therefore, may
not try issues of fact. See, e.g., Anderson, 477 U.S. at 255;
Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58
(2d Cir. 1987); Heyman v. Commerce of Indus. Ins. Co., 524 F.2d
1317, 1319-20 (2d Cir. 1975). It is well-established that
"[c]redibility determinations, the weighing of the evidence, and
the drawing of legitimate inferences from the facts are jury
functions, not those of the judge." Anderson, 477 U.S. at 255.
Thus, the trial court's task is "carefully limited to discerning
whether there are any genuine issues of material fact to be
tried, not deciding them. Its duty, in short, is confined . . .
to issue-finding; it does not extend to issue-resolution."
Gallo, 22 F.3d at 1224. In executing this duty, a court may
consider "depositions, documents, electronically stored
information, affidavits or declarations, stipulations, . . .
admissions, interrogatory answers or other materials." Fed. R.

-3-

Civ. P. 56(c)(1). Although permitted to rely solely on the cited materials, the court may also "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II. FACTUAL BACKGROUND

The plaintiff is a former inmate who was in the custody of the Connecticut Department of Correction ("DOC") when he commenced this action.

From January 13, 1994 through June 28, 1994, the plaintiff was incarcerated at the Garner Correctional Institution ("Garner C.I.") in Newtown, Connecticut. He claims that during his five-month stay at Garner C.I. he was exposed to unsafe levels of radon.

In 2016, while he was incarcerated at Osborn Correctional Institution ("Osborn C.I."), the plaintiff was diagnosed with stage 1 lung cancer. As a consequence, he had to undergo surgery in 2017 to remove a lobe of his lung. The plaintiff testified that it was around the time of his cancer diagnosis that he first learned that there were excessive radon levels at the Garner C.I. facility during his time there. He testified that he was made aware of this information by a newspaper article. He testified further that the doctor who diagnosed him with cancer made the connection between that diagnosis and the plaintiff's exposure to radon at Gardner C.I..

On January 15, 2017, while the plaintiff was an inmate at Osborn C.I., he filed a Level 1 Grievance on Form CN 9602, claiming he had been exposed to radon at the Garner C.I.. The Level 1 Grievance was denied by Warden Falcone, who was the Warden then at Garner C.I., on February 22, 2017. The denial was set forth in Section 5 of the Form CN 9602. Beneath the space where the disposition is stated is a space for explaining the reason for the denial. That part of the form was completed. Immediately beneath that space is a box which can be checked and the words: "This matter may be appealed to DA Quiros." Pl.'s Level 1 Grievance for IGP # 136-17-082 (ECF No. 97-7) at 3. The box in front of those words was checked.

During his deposition, plaintiff acknowledged receipt of Warden Falcone's written response denying his Level 1 Grievance and also acknowledged that the Form CN 9602 stated that he could appeal. The plaintiff did not submit any Level 2 Appeal concerning Warden Falcone's denial of the grievance or otherwise concerning the Level 1 Grievance at issue in this case.

III. DISCUSSION

A. The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all administrative remedies prior to filing a federal lawsuit regarding prison conditions. See 42 US.C. § 1997e(a) ("No action shall be brought with respect to prison

conditions under section 1983 . . . or any other Federal law, by
a prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are
exhausted"). The exhaustion requirement of Section 1997e(a)
"applies to all inmate suits about prison life," Porter v.
Nussle, 534 U.S. 516, 532 (2002), "even where the relief sought
. . . cannot be granted by the administrative process." Woodford
v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532
U.S. 731, 741 (2001)).

"[I]t is the prison's requirements, and not the PLRA, that
define the boundaries of proper exhaustion."  Jones v. Bock, 549
U.S. 199, 218 (2007). Thus, to satisfy the exhaustion
requirement, an inmate must avail themselves of "all steps that
the [prison-grievance system] holds out, and do[] so properly."
Woodford, 548 U.S. at 90 (internal quotation marks and citation
omitted).

The administrative remedies for the Connecticut DOC are set
forth in Administrative Directive 9.6 ("A.D. 9.6"). The
defendants submitted the version of A.D. 9.6 that was in effect
at the time the plaintiff commenced this lawsuit. See CT DOC
Administrative Directive 9.6 (revised August 15, 2013) (ECF No.
97-13). Under this version of AD 9.6, an aggrieved inmate is
required to first seek informal resolution of his issues,
initially verbally, and then if unsuccessful, in writing,

through the use of an Inmate Request Form. See id. at 5 §6.A.
Correctional staff are required to respond to an Inmate Request
Form within fifteen business days of receipt. See id. If an
inmate does not receive a response to the written request within
fifteen business days or if the inmate is not satisfied with the
response to his request, the inmate can file a Level 1
Grievance. See id. at 6 §6.C. The Level 1 Grievance must be
filed within thirty calendar days from the date of the
occurrence or discovery of the cause of the grievance, and the
inmate must include a copy of the correctional staff's response
to his Inmate Request Form or explain why the response is not
attached. See id. The Unit Administrator must respond in writing
to the Level 1 Grievance within thirty business days of his or
her receipt of the grievance. See id. at 7 §6.I. The grievance
can be returned without disposition, rejected, denied,
compromised, upheld, or withdrawn. See id. After that, an inmate
can appeal the decision on the Level 1 Grievance by filing a
Level 2 Appeal within either 5 calendar days of the receipt of
the decision of the Level 1 Grievance, or within 65 days of the
date of the filing of the Level 1 Grievance if the inmate does
not receive a timely response to their Level 1 Grievance. See
id. at 7-8 §6.K.,M. A Level 2 Grievance filed by an inmate
confined in a Connecticut correctional facility is reviewed by
the appropriate District Administrator.  Id. at 7 §6.K. In

certain circumstances, an inmate may also appeal the District

Administrator's disposition of his Level 2 Grievance by way of a

Level 3 Grievance, which is reviewed by the Commissioner of the

DOC or his designee. See id. at 7 §6.L.

An inmate's failure to exhaust administrative remedies is

only excusable if the administrative remedies were not truly

"available," i.e. the administrative remedy is "officially on

the books" but not truly available in practice. Ross v. Blake,

578 U.S. 632, 643 (2016). The U.S. Supreme Court has identified

three circumstances in which an administrative remedy is

considered unavailable:

> [1.] when (despite what regulations or guidance
> materials may promise) it operates as a simple dead
> end—with officers unable or consistently unwilling to
> provide any relief to aggrieved inmates;
> [2. when a procedure is] so opaque that it becomes,
> practically speaking, incapable of use; [or]
> [3.] when prison administrators thwart inmates from
> taking advantage of a grievance process through
> machination, misrepresentation, or intimidation.[1]

Id. at 643-644.

"Because failure to exhaust is an affirmative defense,

defendants bear the initial burden of establishing . . . that a

grievance process exists and applies to the underlying dispute."

Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir.

---

[1] "The three circumstances discussed in Ross do not appear to be
exhaustive[.]" Williams v. Priatno, 829 F.3d 118, 123 n.2 (2d Cir. 2016).
However, "[i]n considering the issue of availability . . . the Court is
[still] guided by these illustrations." Smith v. Perez, 2023 U.S. Dist. LEXIS
121258, 17 (D. Conn. Jul. 14, 2023).

2015) (internal quotation marks and citations omitted). Once
this burden is met, the plaintiff must show that he did exhaust
his administrative remedies or that he was excused from
exhausting. See Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d
54, 59 (2d Cir. 2015).

## B. The Plaintiff Failed to Exhaust Available Administrative Remedies

The defendants contend that the plaintiff did not exhaust
his available administrative remedies because he failed to
appeal the denial of his Level 1 Grievance as required by A.D.
9.6. The court agrees.

As stated above, the PLRA requires an inmate to exhaust all
available administrative remedies before a claim can proceed in
federal court. Under A.D. 9.6, an inmate whose Level 1 Grievance
is denied can appeal that denial by filing a Level 2 Appeal. See
A.D. 9.6 at 7 §6.K. "A plaintiff who files a Level 1 grievance
will not be found to have exhausted his remedies if he had not
pursued the available remedy of filing a level two grievance."
Sanders v. Viseau, 2021 U.S. Dist. LEXIS 247916, 8-9 (D. Conn.
Dec. 30, 2021) (internal quotation marks omitted); see also
Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002) (affirming
dismissal of prisoner complaint on several grounds, including
failure to exhaust administrative remedies, where prisoner had
filed Level 1 Grievance but had not appealed denial to Level 2);

Morales v. Dzurenda, 2009 U.S. Dist. LEXIS 132258, at 4 (D.

Conn. Sept. 8, 2009), aff'd, 383 F. App'x 28 (2d Cir. 2010)

(finding plaintiff failed to properly exhaust his administrative

remedies because he "did not comply with the requirements of

Administrative Directive 9.6 for filing a Level 2 Grievance in

order to appeal the denial of the Level 1 Grievance"); Simms v.

Grady, 2022 U.S. Dist. LEXIS 67186, 13 (D. Conn. Apr. 12, 2022).

The defendants have produced evidence showing that the

plaintiff did not submit any Level 2 Appeal with respect to the

Level 1 Grievance at issue in this case. Captain Donald Acus is

employed by the DOC as a Captain in the District Administrator's

office for District 1. In this role, Acus has access to the

records of requests for administrative remedies pursuant to A.D.

9.6. filed by DOC inmates. Acus avers that he reviewed the

administrative remedies records for both Osborn C.I. and Garner

C.I. for the time period from July 1, 2016 to June 30, 2017, and

his review revealed that, with respect to the Level 1 Grievance

at issue, "Mr. Harris did not take a Level 2 Appeal." See Decl.

of Captain Donald Acus (ECF No. 99) at ¶ 6(i). In addition, the

plaintiff's testimony at his deposition confirms that he did not

appeal the denial by Warden Falcone of his Level 1 Grievance to

DA Quiros, the district administrator designated to receive such

appeals. See Pl.'s Deposition Tr. (ECF No. 97-3) at 35:5-11 (Q:

". . . [D]id you ever take an appeal to DA Quiros, yes or no?"
A: "No.").

The plaintiff offers no evidence to create a genuine issue
as to the fact that he did not appeal the denial of his Level 1
Grievance. Therefore, the plaintiff cannot pursue his claims in
this action unless he was excused from the exhaustion
requirement.  As discussed below, he was not.

### C. Plaintiff Was Not Excused from the Exhaustion Requirement

Though exhaustion is generally mandatory, "prisoners are
exempt from the exhaustion requirement when administrative
remedies are 'unavailable.'" Lucente v. Cty. of Suffolk, 980
F.3d 284, 311 (2d Cir. 2020) (quoting Ross, 578 U.S. at 636).
Here, the plaintiff makes no argument as to the unavailability
of the grievance procedure for his claim.  Nor would such an
argument, if made, be supported by the record.

The plaintiff acknowledged during his deposition that no
one interfered with or otherwise thwarted his ability to file
grievances. See Pl.'s Deposition Tr. at 36:16-25 to 37:1 (Q: "Is
it fair to say that . . . you were able to file [the grievance],
nobody prevented you from filing the document you needed to
file; correct?" A: "Correct." Q: "And nobody otherwise
interfered or thwarted your ability to file documents or
grievances or things of that nature?" A: "That's correct.").

Also, the declaration of Captain Acus establishes that the plaintiff was able to file multiple requests for administrative remedies during the period from July 1, 2016 to June 30, 2017. This included a Level 2 Appeal concerning the denial of a separate Level 1 Grievance. The plaintiff filed that appeal on February 17, 2017, i.e. only five days before he received the denial of the Level 1 Grievance at issue in this case. The plaintiff's proper utilization of the grievance procedure for a different claim only days before the denial of the one at issue here shows not only that the plaintiff both understood and knew how to comply with the applicable grievance procedure, but also that the grievance procedure was available to him.

In his opposition, the plaintiff argues that he did not have to file a Level 2 Appeal because the warden's response to his Level 1 Grievance was "satisfactory." Pl.'s Mem. of Law in Supp. of Pl.'s Obj. to the Defs.' Mot. for Summary Judgment (ECF No. 103) at 3. There is no support in the record for this argument. A non-moving party cannot "rely on conclusory allegations or unsubstantiated speculation" to survive summary judgment but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Robinson v. Concentra Health Servs., 781 F.3d 42, 44 (2d Cir. 2015) (citation and internal quotation marks omitted).

In fact, the plaintiff's argument is contradicted by the record. When asked during his deposition why he did not file a Level 2 Appeal, the plaintiff stated he did not do so "[b]ecause they said right here they gave their version and as much as it is it's inaccurate, we're not talking about 2017 we talking about 2094 (sic) [1994] when I was there at the height of radon poisoning and I was working in the library and in the school." Pl.'s Deposition Tr. at 35:13-17. In response to a follow up question, the plaintiff confirmed there was no other reason he did not appeal.

## IV. CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (ECF No. 143) is hereby GRANTED. The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 3rd day of January 2024, at Hartford, Connecticut.

                                    _____/s/_____
                                    Alvin W. Thompson
                              United States District Judge